IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY MCCARTHY III,

    Plaintiff,

v.

SCOTT GEIST, individually and in his capacity as a Deputy Sheriff for the Contra Costa County Sheriff's Department; and DOES 1–50, inclusive, individually, jointly and severally,

    Defendants.

No. C 16-06782 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this Section 1983 action, plaintiff seeks relief for the beating he took at the hands of another detainee. The sole remaining defendant moves for summary judgment or, in the alternative, summary adjudication of issues. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Aaron Hacker attacked fellow detainee plaintiff Timothy McCarthy III while both were housed at the Martinez Detention Facility in Contra Costa County. Defendant Scott Geist was a Contra Costa County Deputy Sheriff, and was on duty as the desk deputy at the time of the attack.

The record, viewed in a light most favorable to plaintiff, is as follows. On October 21, 2015, Concord Police arrested plaintiff and took him to the Martinez Detention Facility where

facility staff booked him into custody. During the intake process, facility personnel — who appeared to plaintiff to be from the medical staff — asked him if he feared for his safety or for his life in any way. Plaintiff stated that he had testified against another Martinez Detention Facility detainee he knew as "Cornfed" just one day prior and that he feared for his life. Plaintiff did not identify "Cornfed" to be Hacker. The record is unclear how, if at all, this information was recorded or relayed to other facility staff.

Martinez Detention Facility staff then transferred plaintiff to the West County Detention Facility. He arrived at West County at 4:00 a.m., but the staff there abruptly transported him back to the Martinez Detention Facility only a half hour later for a court appearance that morning.

Upon his return to the Martinez Detention Facility, staff placed plaintiff in a holding cell. Plaintiff did not speak with anyone, including Deputy Geist, during this process. He then found a spot on the floor and fell asleep.

The next thing he recalled was waking up with deputies on either side of him. Someone had punched plaintiff in the face while plaintiff was asleep, and he did not wake up during the attack as it had rendered him unconscious. Martinez Detention Facility staff interviewed plaintiff and showed him a photographic line-up, but plaintiff was unable — and unwilling — to identify anyone as his assailant. Deputies later determined Hacker was the assailant.

Deputy Geist was on duty as the desk deputy of the transportation unit at the time of the attack. As desk deputy, it was Deputy Geist's responsibility to supervise inmates and to escort them to their assigned holding cells. From Deputy Geist's desk he could not see the holding cells, so to fulfill his supervisory role he would walk around at random intervals.

Deputy Geist did not make decisions regarding which cells inmates were to be housed. Rather, when inmates arrived from another facility for a court hearing, another officer would have already separated the inmates into groups — including those in protective custody. Even though another deputy would tell Deputy Geist where to place each inmate, Deputy Geist testified that it was his practice to double-check each inmate's management card — also

referred to as a "head card" — for an "Enemy In Facility" notation prior to placing them in a cell. If such a notation were present, he did have the ability to separate inmates from their known enemies.

Over the long and tortured history of this action, the Court has provided every possible opportunity for plaintiff to identify someone who could be held accountable for his injuries. Given that this order addresses claims against the sole remaining defendant, a thorough recap of the procedural history is appropriate.

Plaintiff brought this action in November 2016 against the County of Contra Costa and individual Doe defendants. Plaintiff alleged claims under Section 1983 of Title 42 of the United States Code for violations of his Fourteenth Amendment due process rights, as well as claims for *Monell* liability, negligence, and intentional infliction of emotional distress.

In February 2017, the County moved to dismiss the *Monell* claims. Rather than file a response, plaintiff filed a one-sentence statement of non-opposition. Accordingly, a prior order granted the County's motion.

Plaintiff then amended his complaint in May 2017. He made no attempt to address the deficiencies in his *Monell* claim, and opted rather to omit all claims against the County. The amended complaint also identified six of the Doe defendants as Deputies Geist, Scott Reed, Ryan Montoya, Wade Butler, Sean Otterstedt, and Sergeant Anthony Souza.

All defendants moved to dismiss the first amended complaint in July 2017, which a prior order granted in part. The order dismissed — without prejudice — the claims against Montoya, Butler, Otterstedt, and Souza because plaintiff had pled only that these defendants knew of plaintiff's concerns during intake, but not that they were responsible for any decision that resulted in plaintiff's injuries. The order denied the motion to dismiss as to the claims against Deputies Reed and Geist because plaintiff alleged that these deputies were "on duty and responsible for supervising the inmates at the facility," and that they "had knowledge that Hacker planned to harm Plaintiff" but "failed to monitor Plaintiff and [] Hacker" (Dkt. No. 34).

In November 2017, plaintiff again amended his complaint. Rather than amend to correct the deficiencies identified in the order, plaintiff's second amended complaint did not re-allege

3

any claims against Montoya, Butler, Otterstedt, or Souza. In addition, plaintiff voluntarily removed his claims against Deputy Reed, leaving — as the sole remaining defendant — Deputy Geist.

On January 9, 2018, Deputy Geist answered the complaint. Deputy Geist thereafter brought the instant motion for summary judgment on March 16. This order follows full briefing and oral argument. Trial is set for July 16, 2018. The discovery period ended March 15, 2018.

**ANALYSIS**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Where, as here, the moving party does not bear the burden of proof on an issue at trial, the moving party can satisfy its burden of showing that no genuine issue of material fact remains by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

All evidence must be viewed in the light most favorable to the nonmoving party. "If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences from the non-moving party's indirect evidence, however, may be drawn "only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law." *Id.* at 631–32.

1.  **SECTION 1983 CLAIM.**

To prevail under Section 1983, plaintiff must prove that Deputy Geist deprived him of his rights under the Constitution or laws of the United States while acting under the color of law. Because plaintiff was a pretrial detainee who had not yet been convicted of a crime, his failure-to-protect claim is analyzed under the Due Process Clause of the Fourteenth

Amendment. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016). In order to recover, a pretrial detainee must prove that the prison official acted with deliberate indifference. *Id.* at 1067–68. In *Castro*, our court of appeals articulated the following elements for a failure-to-protect claim (*id.* at 1071):

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Ibid.*

On this summary judgment record, plaintiff has not established that a reasonable officer in Deputy Geist's circumstances would have appreciated the risk involved in placing plaintiff in the holding cell.

The only facts in the record that could possibly establish that a reasonable officer in the circumstances would have been aware of the risk of placing plaintiff in the cell are the notations on plaintiff's head card. The card, as it appears in the record, is stamped with "EIF" and "PC" ("Enemy in Facility" and "Protective Custody"), and has "HACKER, A" handwritten on the back. Plaintiff's theory is that had these notations been present at the time Deputy Geist placed plaintiff in the cell, it would have alerted Deputy Geist to the danger, and he failed to protect plaintiff by not separating the two.

The direct evidence in the record, however, establishes that facility staff added this information *after* the attack. In Sergeant McQuoid's declaration, he stated that he was the one who added "EIF," "PC," and "HACKER, A" to the head card, and he did so after the attack based on his belief that Hacker was the individual who attacked plaintiff (McQuoid Decl. ¶ 2). In Deputy Geist's declaration, he stated he did not observe any notations on plaintiff's head

5

card that indicated plaintiff had enemies in the facility before he placed plaintiff into the cell (Geist Decl. ¶ 3). Deputy Geist also testified that the notation "EIF" is added to an inmate's head card if they have an altercation *while in jail* (Geist Dep. 44–45).

Plaintiff further argues that Deputy Geist's deposition and Sergeant McQuoid's declaration creates a credibility determination for a jury. This is unavailing. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Plaintiff asserts that his statement to the intake medical personnel could constitute such a specific fact. A reasonable fact finder could infer, he argues, that the medical staff were the ones that stamped "EIF" and "PC" onto his head card, and that they did so before the attack. Even in the light most favorable to plaintiff, this is not a reasonable inference.

This order fully accepts plaintiff's testimony — that he told intake medical officers of his fears — as true for the purposes of summary judgment. The inquiry here, however, is to determine whether this fact, "coupled with undisputed background or contextual facts, [is] such that a rational or reasonable jury might return a verdict in [plaintiff's] favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631. Plaintiff relies on an inference from the evidentiary fact that he told medical staff about his fear, to the material fact that Deputy Geist was alerted to the danger by indications on the head card. Such an inference may be drawn *only if* it is "reasonable in view of other undisputed background or contextual facts." *Ibid.* It is not. Given Deputy Geist's deposition, McQuoid's declaration, and the sheer absence of any other supporting evidence in the record, it is simply an unreasonable inferential leap to impute this knowledge to Deputy Geist.

The record paints a clear picture. Plaintiff told intake medical officers he feared for his life when they booked him into custody. Staff transferred him away, but he was abruptly returned. Upon his return, nobody — *including plaintiff* — alerted Deputy Geist to any threat. Deputy Geist then did as he was told and placed plaintiff in the holding cell where Hacker later

6

attacked plaintiff. None of this spells liability for Deputy Geist, who was blissfully ignorant of the problem. Accordingly, summary judgment must be **GRANTED** in favor of Deputy Geist.

### 2. STATE LAW CLAIMS.

Plaintiff also alleges claims of negligence and intentional infliction of emotional distress. As these claims arise out of the same facts as the federal claims, this order retains supplemental jurisdiction. *Satey v. JP Morgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

#### A. Negligence.

Under California law, a plaintiff alleging negligence must prove (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages). *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Here, plaintiff has produced no facts to show that Deputy Geist failed to conform to the duty of care he owed plaintiff.

Plaintiff's contention that the failure to perform mandatory hourly checks on inmates may constitute actionable negligence is true as far as it goes, but he has not put forth any evidence that Deputy Geist failed to do so. In fact, the only evidence in the record on this point is Deputy Geist's deposition, during which he testified that he did check the holding cell more than five times per hour (Geist Dep. 26–27).

Again, plaintiff's protestations that Deputy Geist's testimony is self-serving does not create a triable issue of fact. *Far Out Prods.*, 247 F.3d at 997. Nor does Deputy Geist's admission that he sometimes used the desk computer for personal use show that on this occasion he failed to perform mandatory checks. It is plaintiff's burden of proof at trial — not defendant's — to prove negligence. For the purposes of summary judgment, Deputy Geist has met his burden of showing an absence of evidence to support plaintiff's claims. *Celotex*, 477 U.S. at 325. Plaintiff must now do more than attack Deputy Geist's credibility. *Far Out*

*Prods.*, 247 F.3d at 997. He must produce specific evidence that creates a triable issue. *Bhan*, 929 F.2d at 1409. Plaintiff has failed to do so.

### B. Intentional Infliction of Emotional Distress.

In order to bring a claim for intentional infliction of emotional distress, a plaintiff must show "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). Plaintiff's theory is that Deputy Geist behaved in an extreme and outrageous manner by intentionally placing Hacker and plaintiff in the same cell despite knowing the threat Hacker posed. For the same reasons as stated above, plaintiff has failed to produce specific evidence that supports this theory. Accordingly, summary judgment is **GRANTED** in favor of Deputy Geist on plaintiff's state law claims.

## CONCLUSION

This order finds it troubling that a pretrial detainee can identify a threat to his life, be transferred away from that threat, only to be brought back into harm's way a half hour later. Someone is surely responsible. However troubling this action may be plaintiff has created no triable issue as to this defendant. The Court has been generous in giving plaintiff's counsel many opportunities to plead and to discover a viable culprit. It was plaintiff's responsibility to decide whom to sue, he chose to sue Deputy Geist, and he has come up far short. Accordingly, summary judgment must be **GRANTED** in Deputy Geist's favor.

Plaintiff may move for one final opportunity to amend his complaint to name a party that could be held responsible. Plaintiff will have until **MAY 23, 2018**, within which to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. The motion must include a proposed amended complaint (and a redlined copy) and must explain why the new pleading overcomes all deficiencies, including those this order need not reach. Plaintiff must plead his best case. Otherwise, this case is over at the district court.

**IT IS SO ORDERED.**

Dated: May 2, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8